29 So.2d 852

SENTELL v. RICHARDSON et al.

No. 38162.

Feb. 10, 1947.

Rehearing Denied March 17, 1947.

O'NIELL, Chief Justice.

The plaintiff is suing for 25 shares of the capital stock of a corporation styled Minden Sanitarium, Inc. He claims the stock by virtue of a sale made to the defendant, Dr. Thomas A. Richardson, who, he alleges, was his agent for buying the stock. The suit is founded upon a written contract dated at Minden, La., September 10, 1945, and signed by the plaintiff and Dr. Richardson, as follows:

"This is a contract between Doctors C. S. Sentell and T. A. Richardson.

"Dr. Sentell agrees to advance to Dr. Richardson the money necessary to purchase 10 to 25 shares of stock of Minden Sanitarium, Inc., at price up to $250 per share from Mrs. Mattie Crutsinger or her children.

"Upon purchase Dr. Richardson will request reissue of the stock in his own name, and on the same day of receipt of the new certificates he will endorse same and deliver it to Dr. Sentell. The stock will remain on the books of the Corporation in the name of Dr. Richardson as long as mutually agreeable."

Beneath the signatures of the parties to the contract is a receipt signed by Dr. T. A. Richardson, dated September 20, 1945, as follows: "Dr. T. A. Richardson has this day 9/20/45 received cashiers check for $5000.00 (Five Thousand Dollars) as

per above agreement from Dr. C. S. Sentell."

Immediately after the contract was made Dr. Richardson began negotiations with a local attorney, D. W. Steward, Jr., who was the agent for the widow and heirs of Dr. Paul Crutsinger, for the sale of the 25 shares of stock. As a result of the negotiations, on September 20, 1945, Steward, as agent for Mrs. Crutsinger and her children, agreed to sell the 25 shares of stock to Dr. Richardson at $200 per share or for the total price of $5,000. Dr. Richardson informed Dr. Sentell of the agreement on September 20, 1945; whereupon Dr. Sentell gave Dr. Richardson a cashier's check for $5,000, payable to Dr. Richardson, to complete the purchase. It was then that Dr. Richardson signed the receipt dated that day and written beneath the signatures on the original contract.

On account of the absence of one or more of Mrs. Crutsinger's children, the actual delivery of the stock certificate to Dr. T. A. Richardson was delayed until October 23, 1945. On that day, about 10 o'clock in the forenoon, Dr. Richardson informed Dr. Sentell that the stock would be delivered to him, Dr. Richardson, on that day, that he would have the secretary transfer it on the books of the corporation by issuing a new certificate to Dr. Richardson, and that he would deliver the new certificate to Dr. Sentell·in accordance with their agreement. But, on the same day, October 23, 1945, about three hours after

Dr. Richardson had informed Dr. Sentell of his having bought the stock, and of his intention to transfer it to Dr. Sentell on that day, he, Dr. Richardson, called Dr. Sentell to his office and informed him that he, Dr. Richardson, would not carry out his agreement but would retain the 25 shares of stock for himself or for a partnership of physicians composed of his father, Dr. S. M. Richardson, his brother, Dr. Milton Richardson, and himself. This conversation between Dr. T. A. Richardson and Dr. Sentell was had in Dr. Richardson's office in the presence of Dr. Milton Richardson who did most of the talking for the three Drs. Richardson. Dr. T. A. Richardson then offered to return the cashier's check which Dr. Sentell had given to him on September 20, 1945, but Dr. Sentell refused to receive it. Thereupon Dr. T. A. Richardson went to the office of D. W. Stewart, Jr., agent for Mrs. Crutsinger and her children, and bought the stock for $5,000 for himself and his father and brother, giving to Mr. Stewart three checks for equal amounts, signed by the three Drs. Richardson, respectively, and aggregating $5,000.

On the next morning, October 24, 1945, Dr. T. A. Richardson presented the certificate to Dr. C. M. Baker, secretary of the Minden Sanitarium, Inc., and requested him to cancel it and to issue three certificates of stock for equal amounts for his father, his brother and himself, respectively. Thereafter, about 10 o'clock on that

forenoon, Dr. Sentell again met Dr. T. A. Richardson and again insisted upon his delivering the stock to him, Dr. Sentell, according to their agreement. On Dr. Richardson's refusal to carry out the agreement, Dr. Sentell, on that day, brought this suit to be declared the owner of the stock. He obtained a restraining order against Dr. T. A. Richardson and Dr. C. M. Baker, as secretary of the corporation, and a rule upon them to show cause why a preliminary injunction should not be issued to prevent their transferring the stock on the books of the corporation. The orders were signed by the judge about 4 o'clock that afternoon, October 24, 1945, and Dr. Baker, with whom Dr. T. A. Richardson had left the certificate for the 25 shares of stock, was duly notified of the restraining order and of the rule to show cause why the preliminary injunction should not be issued. Later that afternoon Dr. T. A. Richardson called at Dr. Baker's office and asked for the new certificates, whereupon Dr. Baker returned to him the original certificate for the 25 shares of stock and informed him that he, Dr. Baker, could not transfer the stock or issue new certificates because he had been enjoined from doing so. Soon afterward, on the afternoon of October 24, 1945, Dr. Baker notified Dr. F. S. Martin, who was president of the Minden Sanitarium, Inc., that he, Dr. Baker, had been enjoined or restrained from issuing new stock certificates to Dr. T. A. Richardson in lieu of the

certificate for 25 shares belonging to the widow and heirs of the late Dr. Paul Crutsinger. On that afternoon, October 24, 1945, after Dr. Baker had returned to Dr. T. A. Richardson the certificate for the 25 shares of stock, Dr. Richardson and his father and brother sold the stock to Dr. T. S. Martin for $5,000, the same price which the three Drs. Richardson had paid for it.

Dr. Sentell, having learned of the sale of the stock to Dr. Martin, on the next day after the sale was made, filed a supplemental petition, making Dr. Martin a party defendant, and charging that he had bought the stock knowing of the contract between Dr. Sentell and Dr. T. A. Richardson, and hence in bad faith.

The theory on which the plaintiff rests his claim of ownership of the 25 shares of stock is that Dr. T. A. Richardson was his agent when Dr. Richardson negotiated with the agent of the owners of the stock and when he actually bought it from them, and hence that the title became vested in Dr. Sentell.

The first defense urged by Dr. Richardson and Dr. Martin is that the contract dated September 10, 1945, between Dr. Sentell and Dr. Richardson, was not a mandate or procuration but was in fact a nudum pactum, because, as they aver, no consideration was paid to or received by Dr. Richardson for his undertaking to buy the stock for Dr. Sentell. The second defense is that, if the instrument should be considered as

a procuration or power of attorney, the agent had the right, under article 3031 of the Civil Code, to "renounce" the power of attorney on giving notice to his principal, Dr. Sentell. The third defense is that the contract contemplated the perpetration of a deception or fraud upon Mrs. Crutsinger, who was unwilling to sell the stock to Dr. Sentell and had in fact refused to sell it to him at any price. The fourth defense is that Dr. Martin acted in good faith, without knowledge of Dr. Sentell's claim of ownership of the stock, when he, Dr.Martin, bought the stock from the three Drs. Richardson.

The case went to trial first on the rule to show cause why the preliminary injunction should not be issued; and after hearing the evidence the judge granted the preliminary injunction. The case was heard then on its merits, and after hearing further evidence the judge decided that Dr. Martin was in good faith, having no knowledge of the claim of ownership of Dr. Sentell, at the time when he, Dr. Martin, bought the stock from the three Drs. Richardson. The judge therefore dissolved the injunction and rejected the plaintiff's demand. He is appealing from the decision.

In support of their argument that the contract in question was not a procuration or power of attorney the defendants rely upon article 2985 of the Civil Code, which defines a procuration or power of attorney as an act by which a person gives to another the power to transact certain business for him and *in his name*. It is argued that the instrument in question cannot be considered a procuration or power of attorney because it did not authorize Dr. Richardson to buy the stock *in Dr. Sentell's name*. Our opinion is that the words "and in his name" are not essential to the definition of a procuration or power of attorney, as defined in article 2985 of the Civil Code. If those words were essential to the definition there could be no such thing as a procuration or power of attorney to buy property for an undisclosed principal.. The contract in question was a procuration or power of attorney by which Dr. Sentell gave to Dr. Richardson the authority to buy the 25 shares of stock for him, Dr. Sentell. It is not of vital importance, however, whether the contract should or should not be characterized as a power of attorney. It was a contract by which Dr. Sentell authorized Dr. Richardson to buy the stock at the price stipulated, and by which Dr. Sentell obligated himself to take the stock and pay for it at that price. No further consideration was necessary beyond the obligation of Dr. Sentell to pay the price, $5,000; which he did put up promptly when the power of attorney was carried out by Dr. Richardson.

It is true, according to article 3031 of the Civil Code, that Dr. Richardson had the right to "renounce" the power of attorney at any time before exercising it, on giving reasonable notice to Dr. Sentell. But Dr. Richardson did not notify Dr. Sen-

tell of his, Dr. Richardson's, intention to renounce the power of attorney until he, Dr. Richardson, had completed his negotiations with the agent of the owners of the stock to buy it in his own name. According to article 2456 of the Civil Code a sale is considered completed between the parties when they have agreed upon the object and the price, although the object has not yet been delivered nor the price paid. That the sale was completed before Dr. Richardson gave notice to Dr. Sentell that he, Dr. Richardson, intended to renounce the power of attorney is verified by the provision in article 1922 of the Civil Code that if the seller of movable property remains in possession of it and afterwards sells it to a third party who gets possession before the first transferee, the buyer who thus gets possession must be in good faith and without knowledge of the previous sale, in order to acquire a valid title. Accordingly, Dr. T. A. Richardson, having completed the purchase of the 25 shares of stock while he was yet acting as the agent for Dr. Sentell, could not afterwards acquire a valid title in his own name, or for himself and as agent for his father and brother. On this point the case is governed by the rule stated in 2 C.J.S., Agency, § 81 (b), p. 1170: "Although the agent possesses the power to renounce the agency at any time, his right to do so is dependent upon the nature and terms of agreement creating the agency, and consequently, where the duration is left indefinite and the agent gives reasonable no-

tice to his principal of his renunciation, the agent incurs no liability; but in the event the agent has entered upon a performance of his undertaking it has been said that his right to renounce is limited by a duty of acting in good faith, of not withdrawing wantonly, and of giving the principal a reasonable notice of the intended abandonment."

The doctrine is stated in 3 C.J.S., Agency, § 144 (c), thus:

"An agent must not, in the absence of his principal's full knowledge and consent, purchase for himself property which he is employed to purchase for his principal. A violation of this rule is regarded as a breach of faith and the agent will be considered, although purchasing in his own name, as holding the property so purchased, or its proceeds, for his principal, even though the agent contributes his own funds to the purchase."

In Mechem on Agency, 2d Ed. Vol. 1, Sec. 1224, p. 894, the rule is stated thus: "The well settled and salutary principle that a person who undertakes to act for another shall not, in the same matter, act for himself, results also in the other rule, that all profits made and advantage gained by the agent in the execution of the agency belong to the principal. And it matters not whether such profit or advantage be the result of the performance or of the violation of the duty of the agent if it be the fruit of the agency."

The defense that the contract between Dr. Sentell and Dr. T. A. Richardson contemplated the perpetration of a deception or fraud upon Mrs. Crutsinger is founded upon the fact that she had refused to sell the stock to Dr. Sentell at any price. She had turned down an offer by him to buy the stock for $6,000. But she had refused also to sell the stock at any price to Dr. Martin. He was president of the corporation and Dr. Sentell was manager of the sanitarium. Mrs. Crutsinger's reason for declining to sell the stock either to Dr. Sentell or to Dr. Martin was that the sale of the stock to either of them would have given him a controlling interest in the corporation, and Mrs. Crutsinger desired that no one physician in Minden should have that advantage over the other local physicians. Dr. T. A. Richardson, however, has no interest in urging this defense, because of his having disposed of the stock. Neither should this defense be available to Dr. Martin, because the sale of the stock to him was as much a deception or fraud upon Mrs. Crutsinger as if Dr. Richardson had sold the stock to Dr. Sentell. The defense also conflicts with the maxim Nemo allegans turpitudinem suam est audiendus.

The judge of the district court in this case rested his judgment upon his finding that Dr. Martin was in good faith, having no knowledge of the contract between Dr. Sentell and Dr. T. A. Richardson, at the time when he, Dr. Martin, bought the stock from Dr. T. A. Richardson and his father and brother. The testimony convinces us that Dr. Martin was not in good faith, that he knew of the contract between Dr. Sentell and Dr. T. A. Richardson and knew that it had been violated, at the time when he, Dr. Martin, bought the stock from Dr. T. A. Richardson and his father and brother. The latter testified that at the time of the sale and immediately before handing the stock certificate to Dr. Martin, he, Dr. Milton Richardson, told Dr. Martin of the contract between his brother, Dr. T. A. Richardson, and Dr. Sentell, and told him also that "we had broken that contract and told Dr. Sentell about it and had bought the stock in our own name". Another witness, Dr. C. M. Baker, secretary of the corporation, testified that he told Dr. Martin, before Dr. Martin bought the stock, that Dr. T. A. Richardson had requested him, as secretary, to transfer the stock by issuing three new certificates, and that he had told Dr. Richardson that he had been enjoined from making the transfer. Dr. Martin therefore knew of the litigation which was commenced before he bought the stock. Dr. T. A. Richardson, in his testimony, admitted that when he and his father and brother sold the stock to Dr. Martin "he told us that after this thing was cleared up he would let us have some of that stock back or all of it." The witness ex-

plained that his expression, "after this thing was cleared up", meant after the litigation would be ended. There is no necessity for going further into the details of the testimony showing that Dr. Martin knew, when he bought the stock from the Drs. Richardson, that it belonged justly to Dr. Sentell.

Advertising now to the defendants' allegation that the contract between Dr. Sentell and Dr. T. A. Richardson, dated September 10, 1945, contemplated practicing a deception or fraud upon Mrs. Mattie Crutsinger by having her sell her stock to one to whom she was unwilling to sell it, it is sufficient to say that Mrs. Crutsinger is not a party to this suit and hence that no judgment in that respect can be rendered here affecting any right which she may have in the matter.

The judgment appealed from is annulled and reversed and it is now ordered, adjudged and decreed that the plaintiff, Dr. Charles S. Sentell, is the owner of the 25 shares of capital stock in the Minden Sanitarium, Inc., represented by the certificate No. 11, deposited in the registry of the court by Dr. Shelly F. Martin, on November 2, 1945, and that the certificate for the stock shall be delivered by the clerk of court to Dr. Charles S. Sentell upon his paying to the clerk for the account of Dr. Shelly F. Martin the sum of $5,000. It is further ordered, adjudged and decreed that the plaintiff, Dr. Charles

S. Sentell, shall recover of and from the defendant, Dr. Thomas A. Richardson, the cashier's check for the sum of $5,000, deposited by the plaintiff, Dr. Charles S. Sentell, with the defendant, Dr. Thomas A. Richardson, on September 20, 1945, or shall recover of and from Dr. Thomas A. Richardson the sum of $5,000 if the latter has cashed or otherwise disposed of the cashier's check. All costs of this suit are to be paid by the defendants, Dr. Thomas A. Richardson anud Dr. Shelly F. Martin.

On Application for Rehearing.

PER CURIAM.

The principal contentions in the applications of Drs. Richardson and Martin for a rehearing are (1) that Act No. 180 of 1910 (the Uniform Stock Transfer Act), which they maintain is applicable to this case, was not considered in the opinion, and (2) that the exceptions of no cause or right of action overruled by the lower court and re-urged in this court, by way of answer to the appeal, were not passed upon by the court.

While it is quite true that Act No. 180 of 1910, rather than the codal provisions on sales, controls the transfer of stock, it is equally true that this act does not abrogate the general law of agency, which is applicable here, inasmuch as the agreement between plaintiff and Dr. Richardson has been found to be a mandate or procuration. Therefore, in so far as

Dr. Richardson is concerned, the question of whether the sale was actually completed prior to the attempted renunciation of the mandate was not material to our decision. Dr. Richardson did not have the right to purchase the stock for his own benefit without having given his principal reasonable notice of his intention to renounce the mandate. Consequently, when the stock in question was transferred to him, he acquired no real ownership therein but held the certificate merely as trustee for the account of his principal, who became the rightful owner therof.

■ Since we found that Dr. Martin acquired the stock from Dr. Richardson with full knowledge of the relationship existing between the latter and plaintiff and that, therefore, his purchase was not in good faith, the rights vesting in him under Act No. 180 of 1910 were no greater than they would have been under the general law of sales. See Act No. 180 of 1910, § 7.

Counsel for defendants vigorously argue that this court failed to pass upon the exceptions of no cause or right of action. The bases for the exception filed by Dr. Richardson were disposed of in the opinion. The exception filed by Dr. Martin was predicated upon the provisions of the Uniform Stock Transfer Act, and, for the reasons given above, was properly overruled.

A rehearing is refused.