HAWTHORNE, Justice.
 

 Following our decree in Succession of Quaglino, 223 La. 171, 65 So.2d 127, which dismissed the suit as of non-suit but reserved to plaintiffs the right to renew the action upon certain averments and against the necessary parties, the instant suit was instituted.
 

 In the present suit plaintiffs have appealed from the judgment insofar as it rejected their demand to set aside transfers of certain real property and also transfers of capital stock of the Philip Quaglino Tobacco Company, Inc., made by their father, Philip Quaglino, before his death to the defendants Philip Quaglino, Jr., and Joseph Quaglino, and to have these assets declared to belong to the succession of Philip Quaglino. Plaintiffs have also appealed from the judgment insofar as it rejected their claim against Philip, Jr., for the proceeds of certain insurance on the life of their father.
 
 [1]
 

 
 *875
 
 Philip Quaglino, Sr., died testate on February 23, 1942, survived by his widow in community, Mrs. Josephine Fazzio Quaglino, and eight forced heirs, his six daughters and two sons. In due course his widow was confirmed as testamentary executrix. The estate proved to be insolvent, and the ordinary creditors were paid approximately 25 per cent of their claim. The final account of the executrix was approved and homologated, and she was discharged.
 

 Plaintiffs in the instant suit are the widow in community and four of the daughters. The principal defendants are the two sons, Joseph and Philip, Jr. The other two daughters were named as nominal defendants so that they could appear and assert any rights they might have in this litigation. The corporation, Philip Quaglino Tobacco Company, Inc., was also made defendant, as were Lloyd L. Blanchard and Eugene R. Hornot, who had purchased from the two principal defendants some of the real estate here involved.
 

 Plaintiffs’ principal contention is that their right is based on Article 2239 of the Civil Code, which gives to forced heirs the right to annul absolutely and by parol evidence the simulated contracts of those from
 
 whom
 
 they inherit; that under the provisions of this article the sales of the real estate here involved and the capital stock of the tobacco company should, under the facts, be declared pure simulations and those assets returned to the succession of their father, which was reopened by decree of the lower court after the judgment of this court rendered when the case was first before us.
 

 In 1922 Philip Quaglino started a tobacco peddling business from his home at 5015 Camp Street, using a truck to solicit orders and deliver his merchandise. After this business had been conducted some 15 years, it was incorporated in June of 1937. The articles of incorporation show that the incorporators were Philip Quaglino and his two sons, Joseph and Philip, Jr., and that the corporation was formed for the purpose of conducting a wholesale tobacco business, with a capital stock of $5,000 represented by 50 shares of the par value of $100 each. Philip Quaglino was issued six shares, and each of his two sons two shares. According to the charter, Philip Quaglino transferred to the corporation in payment of his shares tobacco merchandise stock, truck, automobiles, office equipment, and accounts receivable having a total value of $600. Each of the two sons, according to the charter, transferred merchandise stock worth $200 for the two shares he received. The officers of the corporation were Philip Quaglino, president; Joseph Quaglino, vice-president, and
 
 *877
 
 Philip Quaglino, Jr., secretary and treasurer. After the business was incorporated, the three incorporators worked for the corporation and received monthly salaries for their services.
 

 In January of 1939, 40 additional shares were issued to Philip Quaglino, represented by two stock certificates for 20 shares each. Thus at this time there was a total of 50 shares authorized to be issued by the articles of incorporation. In June of 1939 the capital stock of the corporation was increased to $10,000, the father voting 'his 46 shares and each of the two sons his two shares for the increase, and the charter was amended accordingly. Following this increase of the capital stock Philip, Jr., and Joseph were each issued six additional shares of stock. Therefore at this time the total outstanding stock of 62 shares was owned in the following proportions: Philip Quaglino, 46 shares; Joseph and Philip, Jr., eight shares each. In November of 1941, a few months before his death, Philip Quaglino transferred to his two sons his 46 shares of capital stock of Philip Quaglino Tobacco Company, Inc.
 

 Philip Quaglino owned certain real estate in the City of New Orleans. On November 13, 1939, he conveyed by notarial act the real estate designated as 5009-5011 Camp Street and 5015 Camp street to his two sons. The property at 5015 Camp Street was the family home. According to this act of sale the two sons assumed a balance due on a mortgage executed by their father in favor of the Home Owners’ Loan Corporation, upon which the act recited that there was a balance due of $7,197.00. It is appellants’ contention that the sale of this real estate was a pure simulation.
 

 As stated above, Philip Quaglino died in 1942. In his will he bequeathed the usufruct of his entire estate to his wife and bequeathed the disposable portion of his estate to his two sons, share and share alike, as an extra portion in addition to their légitime, subject to the usufruct in favor of their mother. In this will decedent stated: “I acknowledge that the community of acquets and gains between my wife and myself is indebted to our sons, Philip, Jr., and Joseph, in the sum of two thousand ($2000.00) dollars each, for money lent to me over a period of the last three years.” The date of this will is April 20, 1936, which was about a year before the formation of the corporation.
 

 In due course decedent’s succession was opened, and his widow qualified as executrix. In this estate there were inventoried three lots of ground appraised at $2,000 and a homestead account in excess of $2,000. Since the succession was insolvent, the real estate was sold at private sale to pay debts of the succession, and was acquired by the two sons for $2,000. The two sons were placed on the final account as creditors of the succession in the sum of
 
 *879
 
 $2,000 each, as acknowledged in the will, and they and the other ordinary creditors received approximately 25 per cent of their claims, each of the sons receiving $516.54 from the succession on his claim.
 

 After the death of Philip Quaglino his widow, one of the plaintiffs, continued to live in the family home at 5015 Camp Street, receiving as her principal subsistence an old age pension of $50 a month from the state. In the course of time the house in which she resided deteriorated to such a state that she had to move to the home of one of her daughters.
 

 In 1944, 31 shares of stock of the corporation were issued to Louis Philip Gardner, who was the owner at that time of two shares acquired from Philip, Jr., and Joseph after their father’s death. In 1947 the capital stock of the corporation was increased to $50,000 represented by 500 shares of stock, and stock certificates for 130 shares were issued to Joseph and Philip, Jr., and Louis Philip Gardner. In 1950 the stockholders voted an increase in the capital stock to the sum of $100,000 represented by 1,000 shares, and as a result of this increase each of them received an additional 80 shares. On April 5, 1951, when the first suit was filed, according to the stock records of the corporation Philip, Jr., and Joseph each had 240 shares and Gardner had 243 shares. The record further discloses that from Philip Quaglino’s death through June 30, 1955, these shareholders drew from the corporation as what they termed bonuses an amount in excess of $168,000.
 

 In this court appellants ask that the succession of Philip Quaglino be recognized as the owner of the 480 shares of stock of the Philip Quaglino Tobacco Company, Inc., standing in the name of Joseph and Philip, Jr., and that the corporation be ordered to transfer these shares on its books to Mrs. Josephine Fazzio Quaglino as testamentary executrix.
 

 Appellants contend that the corporation formed by the deceased and his two sons was a sham and a subterfuge, that actually the sons never contributed or paid anything for their stock, and that all of the property conveyed to the corporation at the time it was formed was owned by their father, Philip Quaglino. In short, appellants take the position that the issuance and tranfers of all the stock to these appellees are pure simulations, and that all of this stock is owned by their father’s succession. To answer this contention it is necessary that we review some of the facts and circumstances surrounding the formation of this corporation.
 

 In June, 1937, when the corporation was formed, Joseph was 26 years of age and Philip, Jr., was 24. Ever since their father had started his tobacco peddling business, they had worked and helped him in this business. Even while they were going to school, they were working for
 
 *881
 
 their father after school hours. Philip, Jr., finished high school in 1933, and after working for a wholesale company for a short time, in 1935 went to work for his father. When Joseph was 19 he left high school in order to work full time with his father. The record shows that from 1922 to 1937 each of these boys gave hours of work to this business, receiving only small salaries. The tobacco peddling business appears to have been a family business, operated, conducted, and carried on by the father and his two sons. We can draw no other conclusion than that when the corporation was formed in 1937, the two shares of stock were issued to each of the sons by their father for services rendered over a long period of time. See R.S. 12:15; State
 
 ex
 
 rel. Waterman v. J. S. Waterman & Co., 178 La. 340, 151 So. 422. Since we have found that a consideration was actually given by the sons for these shares of stock, the issuance of these shares to them cannot in any sense he considered a simulated sale.
 

 We do not agree with appellants’ contention that the corporation formed as stated above was a sham and a subterfuge. On the contrary we think that, insofar as this record shows, it was a legal and valid corporation formed under the laws of this state. Since the formation of the corporation was legal and valid, the legality of the action of its stockholders and board of directors increasing the capital stock from time to time, once before Philip Quaglino’s death and several times afterwards, followed in each instance by the issuance of additional stock to Joseph and Philip, Jr., is not before us in these proceedings. Any additional stock in the corporation received by these two appellees as a result of an increase of the capital stock of the corporation cannot be considered as a sale of stock by their father to them which the appellants can attack as being simulated.
 

 As to the 46 shares owned by the father and transferred to these appellees a short time before his death, we think the appellants are on sound ground and have established that this sale was a pure simulation.
 

 Appellees in brief filed in this court state that
 
 not one of the transactions here under consideration can be considered as a donation,
 
 but insist that this stock was transferred for a real and serious consideration, which was the satisfaction of a debt for money the boys had given their parents which they had earned in night employment as musicians. In support of this contention they rely on the admission in their father’s will that he owed $2,000 to each of them and on the testimony of their mother that they had given to her and her husband during her husband’s life sums of money from their earnings as musicians from time to time.
 

 We have concluded that the 46 shares of stock conveyed to these appellees were not conveyed in satisfaction of the indebtedness
 
 *883
 
 to each of them mentioned by their father in his will. That these appellees did not so consider this transfer is evidenced by the undisputed fact that they were shown on the executrix’ final account filed in their father’s succession as creditors for this amount, and that their claims for this sum were satisfied in the same manner as those of other ordinary creditors. The appellees certainly cannot claim that their father’s succession owed $2,000 to each and at the same time say that the 46 shares were transferred to them in satisfaction of this same indebtedness.
 

 Appellees have not established to our satisfaction any other indebtedness due them by their parents for which the stock could have been transferred. The endorsement on the stock certificates for these 46 shares reads that the stock is sold for value by Philip Quaglino to Philip, Jr., and Joseph, his two sons. Regardless of this recital, we are convinced that no consideration was given for the sale of this stock, and that its transfer was a pure simulation.
 

 Appellees also claim the ownership of this stock by the prescription of three years under Article 3476 of the Civil Code, which provides that the ownership of movables is prescribed for after the lapse of three years. Article 3476, however, must be read with Articles 3506 and 3509. Article 3506 provides that if a person has possessed in good faith and by a just title as owner a movable thing during three successive years without interruption, he shall acquire the ownership of it by prescription unless the thing was stolen or lost. Article 3509 provides that when the possessor o£ any movable whatsoever has possessed it for 10 years without interruption, he shall acquire the ownership of it without being obliged to produce a title or to prove that he did not act in bad faith. Appellees here did not acquire the 46 shares in good faith; on the contrary their acquisition was in bad faith. Consequently the prescriptive period pleaded by them as a basis for ownership is without application.
 

 Appellees also contend that the sale of this stock, which we have found to be simulated, cannot be set aside because R.S. 12:529 provides that the endorsement of a certificate of stock is effectual though the endorser has received no consideration. As we have said, the 46 shares in question were not acquired by these appellees in good faith, and the transfer was a pure simulation and consequently can be annulled and set aside by forced heirs under the provisions of Article 2239 of the Civil Code. See also per curiam to Sentell v. Richardson, 211 La. 288, 29 So.2d 852; R.S. 12:530.
 

 On November 17, 1939, more than two years after the formation of the corporation, Philip Quaglino conveyed the real estate at 5009-5011 Camp Street and 5015 Camp Street to his two sons. As stated previously, by this notarial act of sale the two sons assumed the balance of $7,197 due on a
 
 *885
 
 mortgage executed by their father in favor of the Home Owners’ Loan Corporation. It is this sale which appellants seek to have set aside on the ground that it was a pure simulation.
 

 After this sale Philip Quaglino and his wife continued to live at 5015 Camp Street. In fact, he was living there at the time of his death, and his wife lived there for some time afterwards. Some parts of the property conveyed were occupied by tenants, and there is no evidence that either of the appellees collected these rentals, which seem to have been paid to the parents or some other relative. The income tax returns of these appellees, however, show that they received some of these rental payments.
 

 The mortgage which these appellees assumed was payable in monthly installments. Before the father’s death some of these installments were paid by the corporation and debited to his personal account on its books. However, after March 1, 1941, which was approximately one year before the father died, all payments made by the corporation of these monthly installments were debited on the books of the corporation one-half to the personal account of each son. In this manner the mortgage was paid in full on June 25, 1943.
 

 Appellants rely heavily on the presumption of simulation which arises from the fact that the vendors continued to live on some of the property sold. Art. 2480, La.Civ.Code. This presumption is not conclusive or irrebuttable, but in such a case the vendee carries the burden of proving that the consideration was paid and the transaction was genuine. Succession of Combre, 217 La. 955, 47 So.2d 734, and authorities there cited; Cusimano v. Ferrara, 170 La. 1044, 129 So. 630.
 

 It is well settled in the jurisprudence of this state that when the price, no matter how inadequate, has been paid by the purchaser in a sale, the transaction is not a simulated one. Citizens Bank & Trust Co. v. Willis, 183 La. 127, 162 So. 822, and authorities there cited; Succession of Nelson, 224 La. 731, 70 So.2d 665.
 

 It has been clearly established in the instant case that a substantial portion of the consideration was paid by the corporation and debited against the personal accounts ■of the two sons. By such proof the appellees have overcome the presumption of simulation existing in this case, and the sale made by their father to them cannot be set aside under Article 2239 on the ground that it was simulated.
 

 Appellants argue that Philip Quaglino, the decedent, “was the corporation”, that payments made by the corporation were actually payments made by him, and that therefore these appellees have not paid any portion of the consideration. This argument has no merit in the light of our finding that the corporation was legally and
 
 *887
 
 validly formed and was not a sham and a subterfuge.
 

 Appellants also rely on Article 2404 of the Civil Code, which prohibits the husband from making a conveyance inter vivos by gratuitous title of the immovables of the community. Since the conveyance of the real estate to the sons was a real sale and not a conveyance by gratuitous title, this article has no application.
 

 Appellants also cite and rely on Article 2444 of the Civil Code, which provides that “The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale”. This article is without application here. The property sold by the father to the sons in the instant case had a real value of $11,000 at the time of the sale, and the record shows that the sons actually paid more than one-fourth of this value by the payments made by the corporation to the mortgagee and debited to their personal accounts. See Taylor v. Brown, 223 La. 641, 66 So.2d 578; Stevens v. Stevens, 227 La. 761, 80 So.2d 399.
 

 Also, we are of the opinion that the evidence is insufficient to justify us in disturbing the judgment of the lower court which rejected appellants’ demand for a judgment against Philip, Jr., for the proceeds of certain insurance on the life of their father.
 

 In the alternative appellants also plead the provisions of Article 1497, which states: “The donation
 
 inter vivos
 
 shall in no case divest the donor of all his property; he must reserve to himself enough for subsistence; if he does not do it, the donation is null for the whole.”
 

 Appellants’ argument on this point seems to be that by conveying the real estate and the 46 shares of stock to his sons Philip Quaglino divested himself of all his property and did not reserve to himself enough for subsistence because when he died there were more debts than assets in his estate. Even if these conveyances were donations, which we have found they were not, there is no evidence in this record to show that at the time these conveyances were made the father did not reserve enough property for his subsistence. On the contrary, on this question of fact the record shows that the father had his salary as president of the tobacco
 
 company,
 
 was the owner of real estate having a value of $2,000 and household furniture and an automobile, had a bank account in which there was a balance of $2,000 at the time of his death, and carried various life insurance policies. There is no merit in appellants’ alternative plea.
 

 For the reasons assigned the sale of the 46 shares of stock in the Philip Quaglino Tobacco Company, Inc., made by Philip
 
 *889
 
 Quaglino to Joseph Quaglino and Philip Quaglino, Jr., is annulled, rescinded, and set aside; these shares of stock are recognized as belonging to the succession of Philip Quaglino, and Philip Quaglino Tobacco Company, Inc., is ordered to transfer on its books to Mrs. Josephine Fazzio Quaglino, testamentary executrix of the decedent’s estate, these 46 shares of stock and to issue a certificate for these shares to the testamentary executrix. Appellees Joseph Quaglino and Philip Quaglino, Jr., are to pay all costs of this suit. In all other respects the judgment appealed from is affirmed.
 

 [1]
 

 . The judgment recognized certain movables, such as an automobile and household furniture, as belonging to the succession.