MOORE, J.
*1171 Larry Fuller appeals a judgment of involuntary dismissal that rejected his claims against Leman Bissell and his insurer, State Farm, for personal injury and property damage arising from an auto accident. We affirm.
FACTUAL BACKGROUND
In the late morning or early afternoon of August 22, 2014, Fuller was exiting the parking lot of the County Market store on Hearne Avenue. He pulled his 1997 Ford truck into the northbound lane of Hearne, where he was struck by a 2010 Chevy Colorado driven by Bissell. The front of Bissell's Colorado ran into the driver's door of Fuller's Ford.
Fuller filed this suit against Bissell and his insurer, State Farm. He alleged that he pulled into Hearne when the traffic was clear, but his truck unexpectedly stalled; stranded in the right-hand northbound lane, he gestured to several other northbound drivers, all of whom safely swerved around him, but Bissell's truck came up fast and broadsided him. He alleged that the impact injured his lower back, caused radiating pain down his left leg, and required two months of treatment with a neurologist and multiple sessions with a physical therapist. He later stipulated that his damages did not exceed $50,000.
State Farm responded that Bissell faced a sudden emergency, as Fuller basically lurched out of the parking lot and into passing traffic; Bissell simply did not have time to avoid the collision.
TRIAL EVIDENCE AND JUDGMENT
The matter came to trial in January 2017. State Farm stipulated that the neurologist's and therapist's records were authentic, and that their treatment was causally related to the accident. The parties also stipulated that there would be no personal judgment against Bissell, if found to be negligent; any judgment would be strictly against State Farm. Fuller offered no documentary evidence or photos.
Fuller called three witnesses. Cpl. Mike Schulz, who investigated the accident, had no independent recollection of it, and had to refer to his report (not introduced in evidence). He said he took no measurements, as both trucks had been moved off the road by the time he arrived; he interviewed both drivers, and neither said he was injured; Fuller said he stalled in the road, but Bissell said that by the time he saw this, it was too late to avoid the accident. Cpl. Schulz issued no citations, but wrote in his report that "Fuller failed to yield right of way," and he felt that Fuller should not have brought his truck on a public highway if it was "not operating properly." He did not write in his report that Fuller said he waved drivers around his stalled truck or that traffic was clear when he pulled into the street. On cross-examination, Cpl. Schulz testified that both trucks were still in the street when he arrived, and that Fuller backed his truck, on its own power (without pushing or towing), into the County Market parking lot.
Bissell, on cross-examination, testified that it was about 1:00 pm on a clear, sunny day, and he was doing about 35-40 mph on Hearne. Coming up to County Market, he saw two vehicles waiting to pull out of the parking lot. The first one came out, crossed the northbound lanes, and stopped in the turning lane, but the second one, Fuller's truck, darted out right behind it, and stopped in the right-hand lane because *1172 the turning lane was occupied. Bissell estimated he was only about 10 feet away when Fuller pulled into his path, and he could not avoid the accident. Bissell was emphatic that Fuller was not stalled in the road and was not waving other cars around him; he just pulled "straight out there and stopped." The officer arrived about 15 minutes later, after the trucks had been moved onto the County Market lot, and did not interview him (Bissell); however, he talked to Fuller, and then told Bissell that Fuller "admitted it was his fault." On direct examination, Bissell identified two street-level and one overhead photo of Hearne, in front of County Market, and marked them to show where he was when he saw Fuller pull into the street and where the accident occurred. State Farm offered these photos in evidence.
Fuller testified that the accident actually happened a little after 10:00 am, as he was leaving County Market. He pulled up to the edge of the concrete, and then pulled out, but his engine killed. He tried, unsuccessfully, to restart it. Glancing out his window, he saw some cars coming north on Hearne, so he gestured to them, through his window, to drive around, and a few did so. But then he saw the white Colorado, which actually appeared to speed up. Fuller said he "jumped" into the passenger seat to avoid the impact, but still got thrown around. He insisted his truck had never stalled before, and after the impact he was able to start it and back it into the parking lot. He did not drive it away, however, because the left front wheel was broken. He admitted that he apologized to Bissell, but recalled that the officer spoke to both of them, separately.
On cross-examination, Fuller admitted that he had drawn disability for about 10 years, and was actually drawing it when this accident occurred; he had been in at least three prior auto accidents, at least one of which culminated in a lawsuit; and his driver's license had been revoked for no proof of insurance. He also admitted there was no reason he could not see Bissell's truck before the impact, and insisted this was the only time his Ford ever stalled, even though he kept the truck only about three or four months after this accident.
After this testimony, Fuller rested. State Farm then moved for involuntary dismissal. After argument, the court held it was "just a credibility call," and there were too many inconsistencies in Fuller's testimony, including his disability history, prior accidents, and how often his engine stalled. By contrast, the court found, Bissell was entirely consistent. The court granted involuntary dismissal, rejecting Fuller's claims.
Fuller has appealed devolutively.
APPLICABLE LAW
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. La. C. C. P. art. 1672 B. This motion requires the trial court to evaluate all the evidence presented by the plaintiff and render a decision based on a preponderance of the evidence. Taylor v. Tommie's Gaming , 2004-2254 (La. 5/24/05), 902 So.2d 380. Proof by a preponderance means that the evidence, taken as a whole, shows that the fact or cause sought to be proved is more probable than not. Hebert v. Rapides Parish Police Jury , 2006-2001 (La. 4/11/07), 974 So.2d 635. The plaintiff opposing a motion for involuntary dismissal is entitled to no special inferences in his favor.
*1173 Crowell v. City of Alexandria , 558 So.2d 216 (La. 1990). The appellate court will not reverse an involuntary dismissal in the absence of manifest or legal error. Town of Arcadia v. Arcadia Chamber of Commerce , 50,564 (La. App. 2 Cir. 4/13/16), 195 So.3d 23, and citations therein.
Under manifest error review, the trial court's factual findings can be reversed only if the appellate court finds, based on the entire record, no reasonable factual basis for the factual finding and the factfinder is clearly wrong. Baker v. PHC-Minden L.P. , 2014-2243 (La. 5/5/15), 167 So.3d 528. When findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trial court's findings. Robinson v. Board of Supervisors , 2016-2145 (La. 6/29/17), 225 So.3d 424, 347 Ed. L. Rep. 1273. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, then the court of appeal may find manifest error or plain wrongness even in a finding based on credibility. But where such factors are not present, and the factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Id. ; Rosell v. ESCO , 549 So.2d 840 (La. 1989).
DISCUSSION
Fuller has advanced two assignments of error. He concedes that the standard of review is manifest error, but urges that the court was plainly wrong in (1) failing to recognize Bissell's "multiple inconsistent statements" and in (2) not considering that his own vehicle "had already stalled in the roadway" when Bissell's truck approached it.
We have closely reviewed the record and find no basis to disturb the district court's credibility call in favor of Bissell. We must observe that Fuller offered no documentary evidence of any kind to contradict Bissell's account, thus negating one avenue of discrediting his testimony under Rosell v. ESCO , supra. Moreover, the alleged inconsistencies in Bissell's testimony concern peripheral facts that do not detract from the main thrust of his account. Fuller cites certain portions of Cpl. Schulz's testimony: the officer testified he took Bissell's statement at the scene, whereas Bissell said he did not "interview" him; and the officer testified (on cross) that the parties moved their wrecked trucks off the street "a little later," after he arrived, whereas Bissell said they did this before the officer arrived. Notably, Cpl. Schulz admitted having no independent recollection of this accident, and had to testify strictly from reading a report he wrote some 2½ years prior, so it is difficult to find that his testimony refutes Bissell's in any way.[1] Fuller made no attempt to offer the report in evidence, as might have been possible under La. C.E. art. 803(5). Maricle v. Liberty Mut. Ins. Co. , 2004-1149 (La. App. 3 Cir. 3/2/05), 898 So.2d 565.
Fuller also argues that one of the photos offered by State Farm, Ex. D-13, disproves Bissell's testimony that a driver cannot see the accident scene from the stoplight one block down, at Sunnybrook Street. The court stated that it was "very familiar" with the area and that before a northbound driver on Hearne reaches Sunnybrook, "you cannot see around the *1174 curve," but after the light "it is a straight shot." The photo provides no basis to reverse the court's decision to credit Bissell's testimony. This assignment lacks merit.
By his second assignment, Fuller urges the court erred in not finding that his truck was stalled in the roadway, and that is the reason it was in the way when Bissell approached. In support, he cites his own testimony, nearly a full page of trial transcript, and Cpl. Schulz's testimony that Fuller told him his truck had stalled. Because he was "disabled" on the highway, La. R.S. 32:141 B, he contends that the oncoming driver owed a duty of proper lookout, Douglas v. West , 10-932 (La. App. 5 Cir. 5/10/11), 65 So.3d 746, but Bissell failed to do so. Fuller submits that the court's conclusion to the contrary is clearly wrong and contrary to the law and the evidence.
The issue is simply whether the district court was plainly wrong to discredit Fuller's claim that he was faultless, only the victim of a stalled truck. Ample record evidence-including Fuller's admission that the truck never stalled before or after this incident-supports the court's decision to disbelieve that it stalled, inopportunely, seconds before Bissell drove by. Moreover, the court cited Fuller's frequency of auto accidents and injury claims, disability claims, and health issues as clouding his overall credibility. The district court did not abuse its discretion in finding that Fuller was not, in fact, a disabled vehicle on the highway and entitled to a special duty of care, under R.S. 32:141 B. The court was entitled to find that Fuller was a driver about to enter or cross a highway from a private road, driveway, alley or building, with the duty to yield the right of way to all approaching vehicles so close as to constitute an immediate hazard, La. R.S. 32:124, and that he breached that duty. We find no abuse of discretion. This assignment lacks merit.
CONCLUSION
For the reasons expressed, the judgment of involuntary dismissal is affirmed. All costs are to be paid by Larry Fuller in accordance with La. C. C. P. art. 5188.
AFFIRMED.

Fuller also contends that, contrary to Bissell's recollection that the accident happened about 1:00 pm, Cpl. Schulz testified it was about 10:20 am; however, even a cursory review of the transcript shows that the officer never once mentioned a time of day. In other words, the alleged discrepancy is completely without evidentiary support.