BLEICH, J. (Pro Tempore )
Plaintiff, Inez Marie Prueitt Madden, filed a petition seeking to annul an inter vivos donation of immovable property she executed in favor of her son and daughter-in-law. She has appealed from the adverse judgment rendered by the trial court. For the reasons set forth below, we affirm.
FACTS/PROCEDURAL HISTORY
Plaintiff, Inez Madden, is a widow in her mid-70s. Her first marriage was to Odell Crawford in 1960. They had a son, Robert Crawford, in 1961, and the marriage ended in divorce shortly thereafter. Plaintiff's *1172 second marriage was in 1964 to Donald Ray Madden. Together they had two children: Hope Madden Roussett, who currently lives in Texas, and Kathleen Madden, who predeceased both of her parents in 1976. Mr. Madden died in 2008. Mrs. Madden was placed in possession of a 1/2 interest in the immovable property obtained by the couple during the marriage,[1] and Hope was placed in possession of the other ½ interest, which she thereafter donated to Mrs. Madden.
In 2014, Robert Crawford and his future wife Cynthia ("Sandy") moved to Louisiana from Texas to take care of Mrs. Madden and the property. With Mrs. Madden's consent and permission, Robert and Sandy moved onto the property and lived in the house located on the property with her until they could move into a mobile home on the property.[2] According to Defendants, Robert and Sandy Crawford, since they have lived on the property, they have continuously maintained the grounds. Mrs. Madden testified that Robert and Sandy helped her keep up the property. The Crawfords testified that they have also paid the property taxes, as well as utility bills, and spent money for "home improvements" to the property, all with Mrs. Madden's consent. According to all parties, prior to the instant suit, they and Mrs. Madden made decisions together about the property, and everyone "got along."
Defendants further assert that, in return for their moving onto the property to help and provide support in the care of Mrs. Madden, she agreed to donate the property to them. According to Defendants, they all met with attorney Gray Kitchens for Mrs. Madden to explain what she wanted. Kitchens explained to Mrs. Madden the consequences of the inter vivos donation and suggested that she retain a lifetime usufruct for herself.[3] Plaintiff and Defendants went a second time to Attorney Kitchens' office to execute the donation and other estate planning documents on July 26, 2016. At that time, attorney Richard Ray met with the parties and notarized the donation, which was witnessed by a third attorney, Spencer Hays, and the law firm's secretary, Lindsay Hill.
According to Mrs. Madden, the incident that prompted the instant litigation was her receipt of correspondence from the Bossier Parish Tax Assessor which indicated that her son Robert was the owner of the property. Mrs. Madden consulted with her daughter Hope and her close friend Judy McKenzie. After Hope failed in an attempt to have Robert and Sandy return the property, Mrs. Madden filed a petition to annul the inter vivos donation on December 22, 2016. Defendants filed an answer and reconventional demand to recover the amounts they spent to improve and maintain the property in the event the donation was annulled. Mrs. Madden filed several amending and supplemental petitions, as well as exceptions of prematurity and no cause of action. Mrs. Madden sought annulment of the donation as a donation omnium bonorum ; on the basis of fraud/duress; and, for lack of donative capacity. Defendants amended their answer each time an amending and supplemental petition was filed. Defendants *1173 sought recovery under detrimental reliance/unjust enrichment theories.
Trial was held April 17-18, 2018. The trial court rendered judgment in favor of Robert and Sandy Crawford and dismissed Mrs. Madden's action to annul, based upon its findings that Mrs. Madden knew what she was doing at the time the donation inter vivos was executed, and she only filed the action to annul because she regretted signing the donation. Plaintiff has appealed this adverse decision.
DISCUSSION
On appeal, Mrs. Madden has asserted several assignments of error. According to Plaintiff, the trial court committed manifest error in failing to:
(1) properly apply the law regarding usufruct and naked ownership to the facts, pleadings, and actions of the parties following the filing of this suit, which would have revealed the "true intent" of Defendants;
(2) give due "credence" to the parties' stipulations as to the medical records introduced into evidence, as well as to testimony regarding dizzy spells of Plaintiff after the date of the medical findings, as well as failing to properly evaluate the parties' credibility and give "due regard" to the age, physical and mental limitations, disadvantages, and susceptibilities of Plaintiff;
(3) properly evaluate the history, actions, and testimony of Defendants, and to consider their bias, prejudice, self-serving interest, and actions following the donation;
(4) apply a reasonable "clear and convincing" standard of proof to the actions and testimony of Plaintiff and her witnesses, considering the circumstances and the limitations of Plaintiff, as well as the meaning of the donation, considering who prepared it;
(5) consider the conflict of interest of the attorney who prepared the inter vivos donation at issue, as well as his failure to disclose and refer Plaintiff to an attorney without a conflict pursuant to Rule 1.7 of the Rules of Professional Conduct ; and
(6) properly consider Louisiana's Medicaid Rules, which will have a profound impact on Plaintiff if the donation inter vivos is upheld in the event that Plaintiff suffers a serious medical event.
Defendants contend that there is no merit to any of Plaintiff's assignments of error, and urge this Court to affirm the lower court's judgment. According to Defendants, the trial court correctly found that the donation set forth the parties' intent. Furthermore, the trial court did not abuse its discretion in assessing the credibility of the parties. Likewise, there was no conflict of interest on the part of Attorney Kitchens, who prepared the donation as requested by Plaintiff. Finally, the issue of Plaintiff's potential eligibility for Medicaid was properly dismissed by the trial court as premature and irrelevant.
Applicable Legal Principles
A district court's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review unless they are manifestly erroneous or clearly wrong. Wooley v. Lucksinger , 09-0571 (La. 04/01/11), 61 So.3d 507 ; Rosell v. ESCO , 549 So.2d 840 (La. 1989). When findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trial court's findings. Robinson v. Board of Supervisors for University of Louisiana System , 16-2145 (La. 06/29/17), 225 So.3d 424 ; Rosell, supra; Fuller v. Bissell , 51,759 (La. App. 2 Cir. 01/10/18), 245 So.3d 1169.
*1174 Under the manifest error standard, the trial court's factual findings can be reversed only if the appellate court finds, based on the entire record, no reasonable factual basis for the factual finding and the fact finder is clearly wrong. Baker v. PHC-Minden, L.P. , 14-2243 (La. 05/05/15), 167 So.3d 528 ; Fuller, supra. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, then the court of appeal may find manifest error even in a finding based on credibility. Robinson, supra. But where no such factors are present, and the fact finder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Id. ; Bellard v. American Central Insurance Co. , 07-1335 (La. 04/18/08), 980 So.2d 654 ; Johnson v. Tucker , 51,723 (La. App. 2 Cir. 11/15/17), 243 So.3d 1237, writs denied , 17-2075, 17-2073 (La. 02/09/18), 236 So.3d 1262, 1266.
A donation inter vivos is a contract by which a person, called the donor, gratuitiously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it. La. C.C. art. 1468. A donation inter vivos shall be made by authentic act under the penalty of absolute nullity, unless otherwise expressly permitted by law. La. C.C. art. 1541. An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed. The typed or hand-printed name of each person shall be placed in a legible form immediately beneath the signature of each person signing the act. La. C.C. art. 1833(A). An authentic act constitutes full proof of the agreement it contains, as against the parties, their heirs, and successors by universal or particular title. La. C.C. art. 1835.
Although the donation may be valid as to form, the substantive requirements of a divestment and donative intent must be fulfilled in order to effect a valid donation. Rose v. Johnson , 06-518 (La. App. 3 Cir. 09/27/06), 940 So.2d 181, writ denied , 06-2428 (La. 12/15/06), 944 So.2d 1273. Donative intent is a factual issue and is reviewed on appeal under the manifest error standard of review. Thomson v. Thomson , 34,353 (La. App. 2 Cir. 01/24/01), 778 So.2d 736.
All persons have capacity to make and receive donations inter vivos and mortis causa , except as expressly provided by law. La. C.C. art. 1470. Capacity to donate inter vivos must exist at the time the donor makes the donation. La. C.C. art. 1471. To have capacity to make a donation inter vivos or mortis causa , a person must also be able to comprehend generally the consequences of the disposition that he is making. La. C.C. art. 1477.
A donation inter vivos or mortis causa shall be declared null upon proof that it is the product of fraud or duress. La. C.C. art. 1478. A donation inter vivos or mortis causa shall be declared null upon proof that it is the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor. La. C.C. art. 1479. A person who challenges the capacity of a donor must prove by clear and convincing evidence that the donor lacked capacity at the time the donor made the donation inter vivos . La. C.C. art. 1482(A). A person who challenges a donation because of fraud, duress, or undue influence, must prove it by clear and *1175 convincing evidence. La. C.C. art. 1483. Proving a matter by clear and convincing evidence requires establishing that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. In re Succession of Dodson , 38,188 (La. App. 2 Cir. 03/03/04), 867 So.2d 921 ; Robertson v. Cubine , 31, 743 (La. App. 2 Cir. 03/31/99), 731 So.2d 931.
If there is no forced heir (and there are none in the case sub judice) , donations inter vivos and mortis causa may be made to the whole amount of the property of the donor, saving the reservation made hereafter. La. C.C. art. 1497. The donation inter vivos shall in no case divest the donor of all of his property; he must reserve to himself enough for subsistence. La. C.C. art. 1498. The determination of whether the donor reserved enough property for his subsistence must be made from the circumstances existing at the time the donation was made. Manichia v. Mahoney , 10-0087 (La. App. 4 Cir. 08/04/10), 45 So.3d 618, writ denied , 10-2259 (La. 11/24/10), 50 So.3d 829 ; LeBourgeois v. Yeutter , 550 So.2d 314, 316, citing Succession of Quaglino , 232 La. 870, 888, 95 So.2d 481, 487 (La. 1957). The current (or future) financial and property status of a donor is not at issue when considering whether a donor left enough for his own subsistence. Manichia, supra .
The person seeking to nullify a donation has the burden of proving that the donation divested the donor of all of his property and that the donor did not reserve enough for his subsistence. Succession of Doll , 593 So.2d 1239 (La. 1992) ; Tatum v. Riley , 49,670 (La. App. 2 Cir. 05/06/15), 166 So.3d 380 ; Holcomb v. Baker , 459 So.2d 158 (La. App. 2 Cir. 1984), writ denied , 462 So.2d 196 (La. 1984).
Excerpts from Trial Court's Reasons for Judgment
The Court finds that Robert Crawford returned to his family ... home with his soon-to-be wife Sandi to take care of his mother [Inez Madden], all by agreement of everyone, and that improvements were made to the property so that all three could live there.... [T]here was no evidence of any dispute[s] among these people for almost two years or actually over two years ... the donation occurred in July of '16. Then Inez said that she was not made aware of the donation until she received a tax notice in November of 2016. The problem really began when ... [Inez's] daughter became aware of the donation and this occurred over the Thanksgiving weekend.... [T]he problem suddenly began shortly thereafter. Everybody was there working together, cooperating, making improvements to the property and living together, but the testimony from Robert was that his sister was upset because she was not included in the decision.... [A]fter Hope became aware of the donation, [Inez seemed to regret] that the donation occurred and has taken action to undo it.
[The first cause of action alleged by Inez] was omnium bonorum , Civil Code article 1498... [T]he basis of the plaintiff's claim is that Inez, if she later moves to a nursing home, this donation will affect her ability to receive long-term health care under the Medicaid rule of uncompensated transfer. That's a lot of ifs. We don't know that. That's speculative ... [I]t is undisputed that her income equals approximately $3,000 a month. She has the usufruct of her property so she has a place to live, and there was no evidence introduced concerning her living expenses.... [A]s it currently stands, it appears as though [Inez] is able to live off of the $3,000 a *1176 month.... [S]he donated the naked ownership of the property, reserving the usufruct, which leaves to her the use of the property.... So the claim for omnium bonorum fails.
The second issue is [Plaintiff's] capacity.... So we start off with the fact that Ms. Inez had capacity, and the burden [is on her] to show that she [didn't at the time of the donation]. This donation occurred July 29, 2016.... Inez sat here during cross-examination and was able to clearly answer questions. Sometimes ... she said that she couldn't recall but the things she couldn't recall were things that were not beneficial to her ... And ... the fact that she even bragged about ... the fact she was able to take care of the property herself, and take care of herself ... further shows that she had capacity then ... to make that donation ... The medical evidence that was presented ... the Dr. Grossinger report that was four months after [the donation] ... is a single report by a radiologist that showed that she had ... a stroke at some point in time, but that it was old ... [T]here was no opinion rendered in the Court by a physician that [Plaintiff] was not competent on July 29, 2016, ... that she lacked capacity on July 29, 2016. And there was a lay opinion issued by [Plaintiff's friend Judy] that she saw changes in [Plaintiff's] faculties, but that's basically the extent of an opinion. Further, [Inez] met with [Gray] Kitchens. When she met with him, she brought a sample donation, she had that in her hand ... brought it with her. So, [Plaintiff] did understand generally the nature and consequences of this ... disposition, clearly, she walked in there with that [donation form] in her hand.... [Kitchens] prepared it, met with her, and had Richard Ray ... act as notary and execute it later in his office. So you [have the testimony of] two lawyers, actually three lawyers when you consider the other attorney [who] was involved, as well as the legal secretary [who] was there, all [in support of the conclusion] that [Inez] had capacity and understood what she was doing at the time.
[S]he complains that the attorney did not explain the concept of a usufruct to her. And as I indicated earlier, [Plaintiff's] testimony was interesting in that whenever things were beneficial to Ms. Inez, she could remember those things, when there were things that were not ... her response was that I simply do not remember, as opposed to the testimony of the other witnesses [who] were present [and] indicated that they did clearly know.... Richard Ray indicated that he specifically remembers explaining the donation to all [of] the parties there. That testimony was supported by Lindsey Hill [a former employee of the law firm].... Kitchens said he does not "toss around French or Latin terms" [usufruct and naked ownership] because they tend to confuse people. [T]hat this was clearly explained to her and that she understood that she had the right, despite this donation, to continue to live on her property, ... is what she in fact did ... So that supports that she had an understanding of the usufruct - the use of and the prudence of it.... So the claim for lack of capacity fails ...
On the issue of fraud, duress or undue influence ... a donation must be declared null upon proof that the done impaired the volition of the donor such as to substitute the donee's volition for that of the donor. La. C.C. art. 1479. [It is implicit ... that the influence] must be operative at the time that the donation is executed. [ La. C.C. art. 1479, comment (d) ]. [Inez] clearly was not in distress, was not forced to go [to Attorney *1177 Kitchens' office]... [she] brought a copy of .. a previous donation with her. So it actually [shows] the contrary, that there was no undue influence, this [was] Ms. Inez's intention.... Ms. Inez's intent was clear and so therefore there could not be any substitution of the donee's intent for hers... [T]he claim for fraud, duress or undue influence fails as well.
Analysis
The trial court meticulously discussed Plaintiff's claims in conjunction with the evidence before it ruled on each one. In rejecting Plaintiff's claim that this was a donation omnium bonorum, the trial judge correctly noted that not only did Mrs. Madden retain a lifetime usufruct over the immovable property, but she had a monthly income of approximately $3,000. Likewise, the court properly rejected Plaintiff's argument about her future Medicaid eligibility and the effect of the donation thereon as speculative. Next, the trial judge's finding that Mrs. Madden had the capacity to execute the donation on its date of execution is fully supported by the record. Not only was there an absence of any medical evidence to the contrary, there was overwhelming testimony that Mrs. Madden understood the nature and consequences of her dispositive action from witnesses who were present when the donation was executed. Finally, we find no error in the trial court's conclusion that there was no undue influence by exerted by the donee Defendants over the donor Plaintiff in this case. In making this finding, the court specifically relied upon testimony by Attorney Kitchens about a previous donation that Mrs. Madden brought with her to the appointment to show him what she wanted to have done. We cannot say that the trial court was manifestly erroneous or clearly wrong in this case.
CONCLUSION
For the reasons set forth above, the judgment of the trial court is AFFIRMED. Costs of this appeal are assessed to Plaintiff, Inez Marie Prueitt Madden.
AFFIRMED.

It is this property that is the subject of the donation inter vivos that Mrs. Madden seeks to set aside.

The trailer was remodeled by Robert and Sandy before they moved into it. According to Robert, he withdrew $30,000 from a retirement account in order to remodel the mobile home.

According to Mrs. Madden, this first visit was abruptly cancelled when she showed up with a friend, Judy McKenzie.