O’NIELD, Chief Justice.
 

 This is a mandamus proceeding to compel a corporation, J. S. Waterman & Co., Inc,, and its officers to transfer to the relatrix 1,127 shares of stock in the corporation, of the par value of 8100 each. The stock is represented by certificates acquired by William Waterman, now deceased, husband of the relatrix, during the matrimonial community between them. Mrs. Watermán obtained an ex parte judgment of court, in the matter of the Succession of William Waterman, declaring her to be the owner of half of the stock and usufructuary of the half inherited by her four minor children, and ordering her sent into possession of the stock certificates.
 

 The'corporation, answering the suit, refused to transfer the stock, on the ground that J. S. Waterman, president of the corporation, claimed that he owned the stock. The company averred that J. S. Waterman, on or about the 1st day of September, 1900, established the business, now carried on by the corporation, of buying, selling, importing, and exporting flour and its products, which business he put his own capital into and owned exclusively, in the name of J. S. Waterman & Co.; that, on or about the 15th day of October, 1916, J. S. Waterman admitted his son, William Waterman, into the business, as a half owner thereof, the son having been theretofore in the employ of his father at a salary commensurate with his duties and responsibilities; and that thereupon and thereafter the father and son conducted the business of J. S. Waterman & Co. as a commercial partnership, using the same name which the father had used theretofore; but that the admission of the son into the business was done verbally, without formality, and without any consideration whatever, and was null ab initio, as being an attempted donation, contrary to law, and not made in the manner or form prescribed by law for donations inter vivos. The corporation averred that, on the 9th of March, 1921, J. S. Waterman and William Waterman and others, by
 
 *343
 
 notarial act, organized the corporation entitled J. S. Waterman & Co., Inc.,- for the purpose of taking over and conducting the business of the partnership of J. S. Waterman & Co.; that, on the organization of the corporation, 1,998 shares of the capital stock were allotted to William Waterman, but that I,870 of the 1,998 shares so allotted to William Waterman were issued to him in lieu of his supposed half interest in the partnership of J. S. Waterman & Co., and that the issuing of the 1,870 shares was therefore without consideration, and was null; that, at the same time, at the earnest solicitation of William Waterman, J. S. Waterman permitted the additional allotment of 128 shares of stock to William Waterman, which was done without any consideration whatever, and was null ab initio, as being an attempted donation, not made in the manner or form prescribed by law. The corporation averred that on or about the 29th of July, 1926, the stockholders conceived the idea of reducing the -capital stock by one-half, and did so.by surrendering their stock certificates for cancellation and receiving in lieu thereof certificates for half of the stock which each stockholder owned theretofore; and that the effect of the transaction as to William Waterman was merely to reduce his number of shares from 1,998 to 999 shares. The corporation prayed, therefore, that the demand of the relatrix should be rejected and her suit dismissed.
 

 On the same day on which the corporation’s answer was filed, J. S. Waterman filed a petition of intervention, making exactly the same allegations that were made in the corporation’s answer to the suit, and praying-that the alleged attempted donations by him to William Waterman should be declared null ab initio, that Mrs. Waterman, individually and as tutrix and usufructuary, should be ordered to "deliver to him, J. S. Waterman, as owner, the stock certificates for the 999 shares referred to in the defendant’s, answer and in his petition of intervention, and that the ex parte judgment which Mrs. Waterman had obtained, declaring her to be the owner of one half and usufructuary of the other half of the stock, should be declared null.
 

 In response to J. S. Waterman’s petition of intervention, Mrs. Waterman filed an excep.-. tion of no cause of action, and a plea of prescription of three years and of ten years, and a plea of estoppel, founded upon J. S. Waterman’s acknowledgments in the authentic act of incorporation and in the authentic act transferring-the property of the partnership'to the-corporation. After hearing arguments on the exception of no cause of action and the plea, of prescription, the judge rendered judgment sustaining both the exception of no cause of action and tbe plea of prescription, and dismissed J. S. Waterman’s petition of intervention.
 

 Thereafter, thé case was called for trial on the issues raised by the answer of the corporation. The attorney for Mrs. Waterman' introduced in evidence, first, the record of the-proceedings had in the Succession of William Waterman, including the ex parte judgment declaring Mrs. Waterman to be the' owner of one-half of the-1,127 shares of stock and usufructuary of the other half; second, a. certified copy of the notarial act of incorporation of J. S. Waterman & Co., Inc.; third, a certified copy of the notarial act by which.
 
 *345
 
 J. S. Waterman and William Waterman transferred all of the assets and the business of the partnership of J. S. Waterman & Co. to the corporation, J. S. Waterman & Co., Inc.; and, fourth, the two stock certificates belonging to the Succession of William Waterman, one certificate being for 1,126 shares and the other for 1 share, both certificates being dated the 29th day of June, 1929. The attorneys for the corporation then tendered, as witnesses, J. S. Waterman and J. S. Waterman, Jr., to prove the allegations of the corporation’s answer. In tendering the witnesses, the attorneys announced that, inasmuch as the judge had sustained the exception of no cause of action and the plea of prescription against the petition of intervention of J. S. Waterman, and had dismissed the petition of intervention, the attorneys assumed that the judge would rule, for the reasons for which he had dismissed the petition of intervention, that the defense which the corporation was urging, presenting the same issues that had been decided against J. S. Waterman, could not prevail. The judge so ruled, and rendered judgment in favor of the relatrix, making the alternative writ of mandamus peremptory. J. S. Waterman has appealed from the judgment dismissing his petition of intervention, and the corporation has appealed from the judgments making the writ of mandamus peremptory.
 

 Of the 1,127 shares of stock held by Mrs. Waterman, one-half as owner and the other half as usufructuary, it appears that only 999 shares are in contest They represent now the 1,998 shares that were issued originally to William Waterman, as stated in the charter of the corporation, when the business was incorporated. That is made plain by the allegation made in the corporation’s answer to this suit, and repeated in J. S. Waterman’s petition of intervention, that, of the, 1,993 shares originally allotted to William Waterman, only 1,870 shares were given for his supposed half interest in the partnership, and 128 shares were permitted by J. S. Waterman to be allotted to William Waterman for no consideration whatever, and that the 1,998 shares thus originally allotted to William Waterman were afterwards reduced to the 999 shares, for which he surrendered his 1,998 shares. Strange to say, the difference between the number of shares that Mrs. Waterman holds certificates for and the 999 shares representing the 1,998 shares originally issued to her husband is 128 shares, the number of shares that the corporation and J. S. Waterman allege were originally allotted to William Waterman for no consideration whatever, when the corporation was organized. Mrs. Waterman avers in her petition that the extra 128 shares which her husband had, in addition to the 999 shares representing the 1,998 shares originally issued to him, were bought by him after the corporation was organized. And the allegation is supported by the fact that the two stock certificates held by Mrs. Waterman, for 1,127 shares, are dated the 29th of June, 1929, and that the charter of the corporation, dated the 9th of March, 1921, shows that 1,998 shares of stock were issued to William Waterman in consideration for his transferring to the corporation his half interest in all of the property and assets of the commercial partnership of J. S. Waterman & Co. The charter shows that the capital stock of the corporation was fixed at $400,000, divided into 4,000 shares, of the par value of $100 each; that the 4,000 shares
 
 *347
 
 of stock had to be subscribed and paid for before the filing of the charter; that 1,998 shares were subscribed for by J. S. Waterman, and 1,998 shares by William Waterman, and that their total subscription of 3,994 shares was “fully paid for and settled by them by the transfer of all of the property and effects belonging to the commercial partnership known as J. S. Waterman & Company, composed of J. S. Waterman and William Waterman, an accurate and detailed statement and description of said property^ being hereto annexed and read in connection herewith, the said property being appraised by the board of directors at $399,400.” The charter shows that the remaining six shares of stock were subscribed for by six other men, named in the charter, each receiving one share and paying $100 in cash. Annexed to the charter is a detailed description and valuation of the assets of the partnership, and a list of its liabilities, showing the net worth of the partnership to be $399,400; and the statement is followed by an appraisement of the assets of the partnership at $399,400, signed by the eight stockholders, including J. S. Waterman. In the act of sale, which is a notarial act, it is recited that J. S. Waterman and William Waterman sold to the corporation all of the assets and business of the commercial partnership of J. S. Waterman & Co., composed of J. S. Waterman and William Waterman, for the price of $399,400, paid by the corporation by the issuing of a certificate for 1,996 shares of stock to ,J. S. Waterman and a certificate for 1,998 shares to William Waterman.
 

 Our opinion is that the judge was right in his ruling that the petition of intervention of J. S. Waterman did not disclose a cause of action, and therefore that the testimony tendered by the corporation to support its-defense was not admissible. Hence the evidence introduced by Mrs. Waterman proves conclusively that William Waterman gave a valuable consideration for his '1,998 (now 999) shares of stock in the corporation. The title to the additional 128 shares held by Mrs. Waterman, as we have said, seems to be not in dispute, because the 128 shares which the corporation and J. S. Waterman contend were issued to William Waterman for no consideration whatever are declared, in the corporation’s answer and in J. S. Waterman’s petition of intervention, to be a part of the 1,998 shares originally allotted to William Waterman when the act of incorporation was signed.
 

 If we are mistaken in our identification of the 128 shares that the defendant and the intervener contend were issued to William Waterman for no consideration whatever, if in fact the defendant and the intervener intended to allege that these 128 shares were issued to William Waterman in addition to the 1,998 shares, and after the corporation was organized, our opinion is that Mrs. Waterman’s plea of prescription is a bar to the claim of J. S. Waterman for these 128 shares of stock. William Waterman held certificates for all of the 1,127 shares from the 29th of June, 1929, to the date of his death, March 30, 1933; and he held certificates for 999 of these shares (originally 1,998 shares) from the date of the incorporation, March 9, 1921, to the date of his death. Therefore, William Waterman possessed the stock certificates for the 999 (originally 1,998) shares, as own
 
 *349
 
 er, for more than twelve years, and he possessed the stock certificates for all of the 1,127 shares, as owner, for more than three years. From the allegations made in the corporation’s answer to the suit, and repeated in J. S. Waterman’s petition of intervention, we infer that William Waterman possessed all of the 1,127 shares of stock in good faith; but, as to the 1,998 (now 999) shares which William Waterman possessed for more than ten years, it is a matter of no importance whether he possessed them in good faith or in bad faith. Article 474 of the Civil Code declares that shares of stock in a corporation, even though the assets of the corporation be composed of immovables, “are considered as movables.” Article 3476 declares that the ownership of movables is prescribed for by the lapse of three years. And article 3509 declares that, when the possessor of any movable whatever has possessed it for ten years without interruption, he shall acquire the ownership of it, without being obliged to produce a title or to prove that he did not act in bad faith. Construing these articles of the Code, in the case of De St. Romes v. Levee Steam Cotton Press Co., 31 La. Ann. 224, this court said:
 

 “The possession of shares in the stock of a corporation for three years, in good faith, and under a title translative of property; or their possession for ten years without good faith or title, acquires the ownership of the shares by prescription.”
 

 The appellants contend that the plea of prescription cannot prevail in this case because, according to articles 1536 and 1538 of the Civil Code, a donation of incorporeal things is null unless it is made by an act passed before a notary public and two witnesses, and because, according to article 2273, a donation made not in legal form cannot be confirmed, but must be made anew, in legal form. The appellants cite the decision in Castleman v. Smith, 155 La. 367, 99 So. 293, holding that a donation not made in the form prescribed by law is absolutely null, and imprescriptible during the life of the donor. That doctrine, however, if applicable at all, is applicable only to the 1,998 (now 999) shares of stock that were allotted to William Waterman in the act of incorporation, in consideration for the transfer of his half interest in the partnership, which half interest, the appellants contend, was given to William Waterman by his father by a donation not in legal form. The argument has no application to the 128 shares of stock if they were acquired‘by William Waterman after the corporation was organized. Therefore, if the 128 shares which the defendant and the intervener allege were allotted to William Waterman for no consideration whatever are the 128 shares that he acquired after the corporation was organized, the plea of prescription is applicable; and, if these 128 shares are, as the defendant and intervener allege, a part of the 1,998 (now 999) shares that were allotted to William Waterman in the act of incorporation, the evidence shows that the 128 shares (in fact all of the 1,998 shares) were acquired for a valuable consideration, and that the plea of prescription is not necessary.
 

 The reason why the judge was right in his ruling that the petition of intervention of J. S. Waterman did not disclose a cause of action, and that the testimony tendered by the corporation in support of its defense was not admissible, is that the allegation of the
 
 *351
 
 defendant and of the intervener, that J. S. Waterman’s taking William Waterman into the partnership as a member “without any consideration whatever” was an attempted donation, was merely a conclusion of law; not an allegation of fact. The allegation was coupled with the further allegation that thereupon and thereafter J. S. Waterman and William Waterman conducted the business of J. Si Waterman
 
 &
 
 Co. as a commercial partnership. The entering into a commercial partnership is, essentially, a synallagmatic and commutative contract. The Civil Code, in article 2801, defines partnership as a synallagmatic and commutative contract made between two or more persons for the mutual participation in the profits which may accrue from property, credit, skill, or industry, furnished in determined proportions “by the parties. Article 2803 of the Code declares that the rules regulating partnerships are those laid down in the title, “Of Conventional Obligations,”, in all things not differently provided for in the title, “Of Partnership.” In Bouv. Law Diet. (Rawle’s Third Rev.) vol. 3, page 3215, synallagmatic contract is defined as “A contract by which each of the contracting parties binds himself to the other.” In vol. 1 of Bouv. Law Diet., page 571, commutative contract is defined as “One in which each of the contracting parties gives and receives an equivalent.” And article 1768 of the Civil Code declares: “Commutative contracts are those in which what is done, given or promised by one party, is considered as equivalent to, or a consideration for what is done, given or promised by the other.” If William Waterman gave nothing whatever for the privilege of becoming a member of the commercial partnership of J. S. Waterman & Co., except the assuming of a solidary liability for the obligations of the.partnership, that of itself was a sufficient consideration to máke the contract a valid one. It is argued in the brief for the appellants that there is nothing in the definition or in the essentia] characteristics of the contract of co-partnership inconsistent with the idea that J. S. Waterman first donated to William Waterman a half interest in the established business of J. S. Waterman, and thereafter formed the partnership with William Waterman. But the allegation in the corporation’s answer to the suit, repeated in J. S. Waterman’s petition of intervention, is merely that William Waterman “was admitted verbally and without other formality, and without any consideration whatever, to a one-half interest in the business belonging to J. S. Waterman, * * * and thereupon and thereafter he and his son, William Waterman, conducted the said business of J. S. Waterman & Company as a commercial partnership,” etc. In that connection, it is significant that, when the business was incorporated, William Waterman was not only made a director, in the act of incorporation, but was 'made vice president and manager; from which it might well be assumed that William Waterman had an active part in the management of the business when it was that of a commercial partnership.
 

 In a supplemental brief the appellants cite the case of Kittredge v. Grau, 158 La. 154, 103 So. 723, where the members of a commercial partnership incorporated the business, and each member received the same interest, in capital stock in the corporation, that he had had in the partnership. Kittredge had acquired his interest in the partnership before he was-married, and the corporation was
 
 *353
 
 organized while he was married. The question, therefore, was whether the capital stock which he acquired in the corporation, in exchange for his interest in the partnership, became community property. It was held that the incorporating of the business did not have the effect of an act of exchange, of Kittredge’s interest in the partnership for the shares of stock in the corporation, and, therefore, that the shares of stock were not community property. Our ruling in the present case, that William Waterman acquired a valid title for the shares of stock which were allotted to him in the act of incorporation in exchange for his half interest in the partnership of J. S. Waterman & Co., is founded upon our opinion that the contract of copartnership was not a donation, or governed by the laws prescribing the form for donations, and therefore that William Waterman had a valid title to his interest in the partnership.
 

 J. S. Waterman has died since this case was argued and submitted, and his succession representative has appeared and become a party to the suit, as appellant.
 

 The judgments appealed from are affirmed.