74 So.2d 47

**GENTILLY LAND CO., Inc.**

v.

**CRAWFORD et al.**

No. 41485.

May 31, 1954.

Rehearing Denied July 2, 1954.

Puneky & Barrios, New Orleans, for intervenor and appellant.

Coe, Nowalsky & Lambert, Edward R. Schowalter, New Orleans, for plaintiff and appellee.

LE BLANC, Justice.

In this proceeding there is involved the validity, vel non, of Certificate No. 9 for 2500 shares of the common stock of the plaintiff corporation, Gentilly Land Company, Inc. The certificate was issued in the name of Ronald A. Hymel on July 30, 1951 at a par value of one cent per share.

- The plaintiff corporation was organized for the purpose of acquiring certain lands on which a cemetery for the burial of colored people would be developed. The idea seems to have been conceived by Hymel who later was joined in the enterprise by Charles J. Lange and G. Charles Porpora. At a pre-incorporation meeting held on May 2, 1951, the three agreed to have an act of incorporation drawn in which the capital stock would be composed of 500 shares of cumulative preferred, non-voting, 7% stock, at the par value of $100 and 10,000 shares of common voting stock at a par value of one (1¢) cent. It was proposed that for the purpose of selling the preferred stock three shares of common stock should be sold to the purchaser at the rate of one cent per share. Each of the three incorporators was to subscribe to seven shares of preferred stock.

At that meeting a proposal was approved to the effect that since Mr. Hymel had originated the idea and had engaged in so much promotional work, he should be entitled to purchase, as a promoter's bonus, 2500 shares of common stock at par. Another proposal was also approved under which Mr. Lange and Mr. Porpora would each be permitted to purchase 500 shares of common stock at one cent per share for services rendered by them in organizing the corporation. A final proposal approved was that since Mr. Hymel had worked so hard for the organization of the burial ground, if he should be successful in securing a large investment from a certain Mrs. Devereaux, that for such service he would be permitted to purchase, as an extra bonus, 2500 additional shares of the common stock, said purchase to be made within five months from the date of incorporation.

An act of incorporation was duly executed on May 14, 1951, and it is made to appear that of the 500 shares of preferred stock there were 21 shares allotted, 7 to each of the three incorporators and for which cash in the sum of $2100 was received. No other cash consideration was received nor was there any valuation for services and property.

On May 28, 1952, a document was drawn up and signed by Ronald A. Hymel and Zedic B. Crawford, before two witnesses, in which it is recited that whereas they had associated themselves together for the development of the project, it has ever been

their common and mutual understanding that they should be on an equal footing insofar as the benefits to be derived are concerned and accordingly Hymel acknowledges that whereas Certificate No. 9 dated July 30, 1951, evidencing 2500 shares of the common stock of Gentilly Land Co., Inc., though standing in his name, they are in reality and in fact the property of Zedic B. Crawford and that Hymel holds them as Crawford's agent and for the purpose of convenience. The document further recites that Certificate No. 8 for 2500 shares of common stock issued on the same day as the other, in the name of Hymel, is held by him for his own personal account but that with respect to both certificates it is agreed that the voting power of the shares of stock represented shall, for a period of ten years, be pooled and voted as a block in such manner as to promote and protect the best interest of the parties.

In the course of time, Mrs. Isabel Spellman Devereaux became the purchaser and owner of 100 shares of the preferred stock of the corporation and 2800 shares of the common stock. She also had become a large preferred creditor and on May 14, 1952, she with two other owners of some of the preferred and common stock, petitioned the Civil District Court of Orleans Parish for a receivership, alleging various acts of mismanagement on the part of the officers. After regular proceedings had, Mrs. Devereaux was appointed Receiver and qualified as such.

In the meantime Certificate No. 9 was seized in the hands of Ronald A. Hymel under garnishment at the instance of a judgment creditor of Zedic B. Crawford and upon learning this (Mrs. Devereaux, acting in her capacity as Receiver of The Gentilly Land Co., Inc.), as she alleges, instituted the present proceeding seeking to enjoin the sale of the said certificate under seizure; to have the same surrendered to the corporation and asking for judgment decreeing its nullity and ordering its cancellation. Her demand is predicated on the allegation that the certificate for the 2500 shares of stock involved was issued in the name of Ronald A. Hymel, for account of Zedic B. Crawford, without any consideration or payment to the corporation by the said Hymel and Crawford or any other person. Plaintiff impleaded as parties defendant both Hymel and Crawford, Llewellyn J. Scanlon, Civil Sheriff of Orleans Parish and Southern Tile Co., Inc., the seizing creditor.

An answer was filed by Crawford in proper person in which he admits all the allegations made by the Receiver. Hymel made no appearance other than to testify as a witness called by the plaintiff and his testimony was ordered to be taken as his answer by the trial judge. The controversy therefore has narrowed itself to one between the Receiver of the corporation and the seizing creditor, Southern Tile Co., Inc., which at its first pleading, filed a rule to dissolve the restraining order.

The rule to dissolve was based on an estoppel urged against the plaintiff corporation to impeach the title of certificate No. 9 issued by it, and on the contention also that valuable consideration in the form of services rendered had been given for the stock. The Receiver answered the rule to dissolve, reiterating its allegation of nullity of the stock, and alleging further that it would be shown that in the application made by the corporation to the Commissioner of Securities for the State of Louisiana it was recited that "no stock (either common or preferred) would be issued except for a cash consideration and that no stock would be issued for services." The Receiver further represented that Certificate No. 9 was issued for account of Crawford without any consideration or payment being made and on the expectation that he would pay for same and that the face value thereof was carried on the books of the corporation on open account. With regard to the plea of estoppel set out in the motion to dissolve, the Receiver stated in her answer that the same was of no avail because the corporation itself could not by its consent cure the nullity of the certificate of stock and what it could not do by consent could not be done by estoppel.

On the same day that the answer to the rule to dissolve was filed, the Receiver filed a plea of estoppel based on the alleged offer and tender made by Southern Tile Co., Inc., to pay for the stock on two different oc-casions, thus admitting and confirming the allegations made in the Receiver's original petition that the certificate had been issued without consideration and was illegal, null and void, ab initio.

Three days after it filed its rule to dissolve the restraining order, Southern Tile Co., Inc. filed its answer to the plaintiff's petition in which it denied practically all of the allegations thereof and, further answering, set out that the plaintiff corporation has been actuated by a desire to benefit Zedic B. Crawford in its attempt to defeat the rights of a seizing creditor knowing full well that in a certain judicial proceeding he claimed to be the owner of the stock in controversy whereas now he is endeavoring to expedite the cause of the corporation by claiming that he never paid for it. Further it alleged that the plaintiff corporation has refused, without cause or reason, to recognize the validity of Certificate No. 9 notwithstanding the fact that on the same day that that certificate was issued it also issued certificates of stock to Ronald A. Hymel, G. Charles Porpora and Charles Lange upon the same terms and conditions, as well as under the identical circumstances. Further it alleged that considering the fact that Mrs. Devereaux, now the president of the corporation, acquired from the said parties a total of 3500 shares, paying them a substantial price therefor, and thus convinced that the title to those shares is unassailable, the fear that protective measures have to

be extended to innocent persons regarding the stock represented by Certificate No. 9 is more imaginary than real.

The lower court first heard the rule for preliminary injunction and the rule to dissolve the temporary restraining order together. The pleas of estoppel were overruled and after hearing testimony on both rules, the trial judge rendered judgment in favor of the plaintiff, dismissing the rule to dissolve and granting a preliminary injunction restraining the sale by the Sheriff of Certificate No. 9. Later, another hearing was held on the rule for a permanent injunction and judgment was rendered again in favor of the plaintiff perpetuating the writ of injunction and further ordering the surrender of Certificate No. 9 to the plaintiff corporation, decreeing its nullity and ordering its cancellation from its books.

From that judgment The Southern Tile Co., Inc., took an appeal to the Court of Appeal for the Parish of Orleans which Court transferred the case to this Court on a matter of jurisdiction. 65 So.2d 376.

The question of jurisdiction arose again in this Court on the contention of the appellant that since the par value of the 2500 shares of common stock in contest is one cent per share there is only the sum of $25 in dispute. We observe from the record however, that a plea to the jurisdiction of the district court had been urged on the same basis and when it was shown that a purchase made shortly before, of

3500 shares of common stock of the corporation had been made on the basis of a bit more than $1 per share, counsel for Southern Tile Co., Inc., herself stated that that gave the Court jurisdiction. The fact of such sale is also pointed out in the opinion of the Court of Appeal as its reason for transferring the case to this Court as it shows that a value of more than $2000 is involved in the proceeding.

Throughout the trial the district judge ruled that the validity of Certificate No. 9 only was involved in the case and he confined the testimony to the issuance of that one certificate and whether any consideration had ever been given for it. He concluded on the trial of both the rule for a preliminary injunction and the rule for a permanent injunction that the testimony failed to show that any consideration was given, that it was issued in direct violation of Article 13, § 2 of the State Constitution and therefore is null and void. He cited the case of Mackie Pine Products Co. v. Frederick, 148 La. 687, 87 So. 712, 713 in support of his ruling.

Appellant through its counsel strenuously urges that the trial judge was in error in restricting the testimony and that it should have been allowed to bring out the fact relative to the issuance particularly of Certificate No. 8 which, it is contended, is so closely connected with Certificate No. 9 that it is not possible to separate them. The contention is that they were both issued for promotional services

rendered by Crawford as well as by Hymel; that No. 9 was held by Hymel as agent for Crawford who, as is acknowledged in the document of March 31, 1952, referred to as a counter-letter, should be on an equal footing inasmuch as they had associated themselves for the purpose of launching the project for the establishment of the cemetery. Be that as it may, the proposal which was approved at the pre-incorporation meeting was not for the issuance of common stock to Hymel or anyone else for promotional services but only for the right of purchasing so many shares of that stock as a bonus. As far as any inter-relation between Certificates No. 8 and No. 9 is concerned, we think it is made plain by the recitals of the counter-letter that they were treated as two separate and distinct certificates, No. 8 being held by Hymel for his own personal account and No. 9 being held by him as Crawford's agent. For as much as neither had a right to claim either certificate until he had exercised his right to purchase the stock, the important question presented in this case was whether or not Certificate No. 9 was ever paid for. Crawford admits that he never, and no one else is shown to ever have paid for it. From the analysis of the stock certificate ledger made on May 28, 1952 by the certified public accountant who was the auditor of the corporation from its incipiency, it appears that the full amount of the par value of the stock covered by Certificate No. 9, issued on July 30, 1951 and listed as "Ronald A. Hymel (Zedic B. Crawford)" is due as of that date. All the testimony tends to show that Certificate No. 9 was never paid for and the trial judge's ruling to that effect is undoubtedly correct.

■ Counsel for appellant complain about the ruling which excluded the offer of an Act of Sale of May 21, 1952 wherein it is made to appear that Mrs. Devereaux acquired Certificate No. 8 for 2500 shares of common stock from Ronald A. Hymel, Certificate No. 6 for 500 shares from G. Charles Porpora and Certificate No. 7 for 500 shares from Charles J. Lange and they persist in their contention that all of these certificates, reference being made particularly to No. 8, were issued on the same date and under the same circumstances as Certificate No. 9 and if they are valid as evidently she considered them to be since she bought them, Certificate No. 9 is of equal validity. The trial judge was equally insistent in his ruling that he was only concerned with the validity of Certificate No. 9 and as it was not included in the sale that was sought to be offered in evidence, the offer was irrelevant and immaterial. We can see no error in his ruling in that respect.

■ Much is said in argument about the motives that actuated Mrs. Devereaux in bringing this proceeding to have Certificate No. 9 declared a nullity and ordered cancelled from the books of the corporation. But the Court is not concerned with her

motives unless they were prompted by fraud or based on collusion, and nothing of that kind is alleged in any of the pleadings.

We conclude that the trial judge was correct, under the facts presented to him, in applying the provisions of Article 13, § 2 of the Constitution to the issuance of the certificate of stock in contest. That section of the Article provides:

"Corporations shall not issue stock or bonds except for labor done, or money or property actually received; and all fictitious issues of stock shall be void; and any corporation issuing such fictitious stock shall forfeit its charter."

In this case the stock was not to be issued for services rendered or labor done. All that services rendered by a prospective incorporator entitled him to, according to the pre-incorporation agreement, was the right to purchase, as a bonus, a certain amount of common stock and until that right was exercised by the payment of the stock, the corporation could not issue it, and if it did, the stock was fictitious and became void.

We think that the case of Mackie Pine Products Co. v. Frederick, supra, has application to the case at bar for in that case the Court rejected the contention that carrying the stock as an open account on the books of the corporation was equivalent to a payment even though the purported stockholder claimed that he was financially able to pay the full amount. It did appear that he had paid for four out of the twenty shares carried on the open account but the Court definitely stated that: "Only in so far as value has been received therefor is the issue of stock valid."

We find it unnecessary to go into the question of what effect the Article of the Constitution would have on stock that is issued in violation of its provisions and which has passed by regular sale into the hands of innocent third persons. That issue is not presented in this case as title to the assailed stock is still in the name of the original incorporator as agent for the party whose property it purportedly is and for whose debt it has been seized. The mere act of seizure did not transfer or divert the title of the debtor. Title could only pass at the moment of the sale under seizure had one taken place. See U. S. v. Hawkins' Heirs, 4 Mart., N.S., 317; Sheldon v. New Orleans Canal & Banking Co., 11 Rob. 181.

We find the judgment appealed from to be correct in every respect and for the reasons stated it is now affirmed at the cost of the appellant.

FOURNET, C. J., and MOISE, J., absent.