11 BROWN, Judge.
Plaintiff, Chauncy Theron Fitch Nelson, and his brother, Tracy Fitch Nelson, are the natural children of Willie Fitch, born of his marriage to Winnifred Washington Fitch. The Fitches divorced and the two children were adopted by Winnifred’s second husband, Dr. Richard T. Nelson, Jr.
Willie Fitch, an employee of the More-house Parish Highway Department, was standing between two parked vehicles when a Burkeen Construction Company truck struck one of the vehicles owned by the City of Bastrop, which then struck and killed Fitch. Fitch’s second wife, Dorothy Fitch, filed a wrongful death and survival action against Burkeen Construction Company, Michigan Mutual Insurance Company and Charles Stennett, the driver of the truck (“Burkeen”).[1] Chauncy and his brother Tracy also asserted wrongful death and survival claims.
Burkeen filed an exception of no right of action, alleging that Chauncy and Tracy, as the adopted children of Dr. and Mrs. Nelson, had lost their right to bring survival and wrongful death actions for the death of their natural father. In response, Chauncy raised the issue of the validity of his adoption.
The trial court found that Chauncy’s adoption was an absolute nullity which allowed him to pursue both wrongful death and survival actions. The court then found that Tracy, as a child given in adoption, had the right to assert a survival action although he could not recover damages for Fitch’s wrongful death. On review, this court held that as an adopted child, Tracy had no right of action for either the survival or wrongful death of his natural father. As to Chauncy, the case was remanded to the trial court for a determination of the validity of his adoption, with instructions that Dr. Nelson be added as an indispensable party defendant. 12See Nelson v. Burkeen Construction Company, 605 So.2d 681 (La.App. 2d Cir.1992).
Thereafter, Chauncy filed an amended petition directly attacking his adoption and naming as a defendant his adoptive father. Burkeen countered with another exception of no right of action. Chauncy then filed a motion for partial summary judgment on the issue of the adoption’s validity.
According to Chauncy, the act of adoption was invalid because it was executed on April 12, 1977 when he was only 17 years old and thus required consent of his natural father, Willie Fitch, whose signature was not obtained. Burkeen contended that the notarial act of adoption was misdated and was actually signed and executed in 1978 when Chaun-cy was 18 years old; therefore, Fitch’s consenting signature was unnecessary, the adoption is valid and all of plaintiffs claims are foreclosed.
The trial court held a hearing on the exception and motion for partial summary judgment. By judgment dated August 19, 1997, the trial court overruled the exception of no right of action, denied summary judgment and, based upon its factual finding that the act of adoption was executed in 1977, declared the act of adoption to be absolutely null and void.[2] Burkeen has appealed.

*263
Discussion

Because the trial court’s factual determination regarding the execution date of the act of adoption is critical to a resolution of the issue of the adoption’s validity, we will first address Burkeen’s argument that the trial court erred in finding that the act of adoption was executed on April 12,1977.
An appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Furthermore, if the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell, supra.
Notwithstanding the trial court’s determination regarding the credibility of Chauncy Nelson, the record does not support the court’s conclusion that the notarial act was executed on April 12, 1977, held by Attorney Jerome Powell and not recorded until more than one year later, on April 14, 1975.
Our careful review of the evidence of record shows the following.
Dr. and Mrs. Nelson did not immediately begin adoption proceedings upon their marriage. Instead, Dr. Nelson insisted that the couple put off adoption until the children were ready; he wanted to wait until Chauncy and Tracy approached him on their own and asked him to become their father. Dr. Nelson stated that the boys first spoke to him about adoption in the spring of 1977. Thereafter, Dr. Nelson contacted an attorney, Jerome Powell, to begin the adoption process.
Both Dr. and Mrs. Nelson were aware that Willie Fitch, the children’s natural father, was against the adoption and would not give his consent. Mrs. Nelson was also worried that if Chauncy’s adoption was completed before Tracy’s, her younger son would feel left out and unwanted. Dr. Nelson agreed and made this desire known to Attorney Powell.
Dr.' and Mrs. Nelson first approached Jerome Powell in the spring of 1977 Uto begin adoption proceedings. Thereafter, on September 20,1977, Powell, on behalf of Dr. and Mrs. Nelson, filed a verified petition to adopt both Tracy (aged 13) and Chauncy (aged 17) in Caddo Parish Juvenile Court. The matter was set for hearing on November 3, 1977, with an investigation report to be prepared prior to the hearing by the Department of Public Welfare. The report was not timely; apparently, a hearing was held in chambers, evidence was adduced and the matter was left open for receipt of the Dept, of Public Welfare’s confidential report.
Between the date of the first hearing and the second, postponed hearing, Attorney Powell was contacted by Juvenile Court Judge Gorman Taylor, who informed counsel that Chauncy Fitch could not be adopted by court decree. Judge Taylor explained several times to Powell that while Tracy was 13 and subject to adoption by judicial decree, Chauncy, who was older than 16, was beyond the jurisdiction of the juvenile court. He further pointed out that because Chauncy was 17, he was still a minor and his adoption, which could be effected only by notarial act, required the consent of his natural father, Willie Fitch. However, if Powell waited until Chauncy was 18, parental consent would not be required.
Judge Taylor noted that while Powell did not indicate to him how he intended to proceed with Chauncy’s adoption, he was certain that the attorney understood that a notarial act executed after Chauncy’s 18 th birthday was the only way he could proceed absent Fitch’s consent. Judge Taylor testified that Powell did not mention to him that such a notarial act had already been prepared and executed.
Nonetheless, Powell did not remove Chauncy’s name from the juvenile court petition. Instead, based upon the judge’s advice, he drafted a private act of adoption to be *264 executed after Chauncy’s 18 th birthday in December 1977. This | ..¡scenario fits with the Nelsons’ request that both boys be adopted together because Tracy’s adoption would likely take place before the end of 1977 at the postponed hearing and Chauncy’s adoption could be filed thereafter, on or after December 3, 1977, his 18th birthday, with no need for Fitch’s consent.
Dr. Nelson recalled that Tracy’s adoption almost went through in December 1977. As he stated in his deposition testimony:
The reason I say that — the lawyer called me and said, Doc, I got Christmas present for you. He said, it’s a little early, but your papers for your little son went through. And then he said, after the holidays we will get together, there’s no rush, and bring all of this to a conclusion. And that’s what happened.
Apparently, Tracy’s adoption was postponed until March 7,1978, the date that the judicial decree of adoption was rendered. Thereafter, on April 14, 1978, Attorney Powell recorded the notarial act of adoption bearing the date April 12, 1977. As noted by Dr. Nelson in his deposition:
Q. At the time you had not signed any papers for Chauncy and you were waiting for the papers to be signed by the judge for Tracy? ... Is that so?
A I had not signed anything.
[[Image here]]
Q Well, I thought you told me earlier your wife didn’t want him to be adopted before Tracy.
A. And he wasn’t.
Q. He wasn’t?
A Both of them as far as I was concerned were adopted after the first of the year in 1978.
The above testimony of Judge Taylor and Dr. Nelson mandates that the only reasonable conclusion is that the notarial act of adoption was executed on leApril 12, 1975, when Chauncy was 18 years old, and is therefore valid without the consenting signature of Willie Fitch.
As noted above, it was anticipated that Tracy’s adoption would be finalized before the end of 1977; Powell drafted the notarial act of adoption to be executed either simultaneously with or soon after Tracy’s adoption was judicially decreed. Therefore, the year 1977 was typed, with blanks left where the month and date of execution would be written. Tracy’s adoption, however, did not take place until March 1978. Thereafter, the parties executed the notarial adoption of Chaun-cy on April 12, 1978, and by oversight, neglected to mark out the pre-printed date of 1977 to reflect the correct year, 1978. The trial court erred in concluding otherwise and in declaring invalid the notarial act of adoption.
Furthermore, even if the record reasonably supported the determination that the act of adoption was executed in 1977 when Chauncy was a 17-year-old minor and was thus an absolute nullity as it lacked the consenting signature of Willie Fitch, we would nonetheless find, based on principles of equity and fairness, that he could not recover wrongful death or survival damages for the death of his biological father.
As noted by both parties in their briefs, there is no recent jurisprudence to guide our analysis of this issue. Older ease law speaks of the “absolute” nullity of adoptions; however, when these cases were decided, there were two types of absolute nullities, “absolutely” absolute nullities and “relatively” absolute nullities, the latter of which were susceptible to ratification, waiver and could only be raised by those in whose favor the cause of nullity ran. See Whitney National Bank of New Orleans v. Schwob, 203 La. 175, 13 So.2d 782 (1943) and cases cited therein; Thornton v. Thornton Farms, Inc., 526 So.2d 315 (La.App. 3d Cir.1988).
|7In Succession of Pizzillo, 223 La. 328, 65 So.2d 783 (1953), the supreme court held that an adoption which lacked the signature of one of the natural parents was not “absolutely null” such that this defect could never be cured or waived. The court found that the parties, by their inaction, had waived any infirmity and thus upheld the adoption under Act No. 46 of 1932, § 13, which provided a six month prescriptive period for actions to set aside or annul adoptions. See also In the Interest of Voyles, 417 So.2d 497 (La.App. 1st *265 Cir.1982), writ denied, 420 So.2d 981 (La. 1982).
While these cases are not controlling, they are important because they reflect a legislative and judicial recognition that societal or public interests are not always offended by acts of adoption which are procedurally defective. Instead, the parties to such acts, whether by affirmative manifestation or mere inaction, are in certain instances prohibited from assailing a deficient act of adoption, even when the complained of defect would otherwise render the act an absolute nullity.
Under the facts and circumstances of this case, to allow Chauncy to set aside his adoption and recover for the death of his natural father would be incongruous with basic principles of equity and fairness.
Notwithstanding the lack of Fitch’s consenting signature to the act, all parties “acquiesced” to the adoption. Although allegedly opposed to Chauncy’s adoption by Dr. Nelson, Willie Fitch never sought to have the act of adoption declared null. In fact, he never manifested his opposition to the adoption to anyone other than members of his family. Dr. and Mrs. Nelson, in addition to executing and signing the act of adoption, provided Chauncy with a home, education and financial support, in every way treating him as their son. As for Chauncy, as noted by this court previously:
|gAs an adult, for approximately fourteen years Chauncy held himself out as the child by adoption of Dr. Nelson. With the possibility of financial gain for the death of his blood father, Chauncy now seeks to set aside the adoption asserting a nullity that was established to protect the parental interests of Willie Fitch. Chauncy has substantially benefited for many years from this alleged “null” act.
Nelson v. Burkeen Construction Co., supra at 685.
We reiterate that the trial court erred in finding that the notarial act of adoption was executed on April 12,1977, and that Chauncy has a right of action for either the survival or wrongful death of Willie Fitch, his natural father.

Conclusion

For the reasons set forth above, the trial court’s judgment overruling the exception of no right of action is reversed and the demands of plaintiff, Chauncy Theron Fitch Nelson, are hereby dismissed with prejudice. The costs of this appeal are assessed to plaintiff.

. Also named as a party defendant was the City of Bastrop.

. The trial court's ruling on the exception essentially granted the same relief Chauncy sought in his motion for summary judgment.